**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Manuel P.N.,

Petitioner,

v.

David Easterwood, *Director of St. Paul Enforcement and Removal Operations, Immigration and Customs Enforcement*; Markwayne Mullin, *Secretary of the Department of Homeland Security*; Dave Isais, *Administrator, Sherburne County Jail*; David Venturella, *Acting Director, U.S. Immigration and Customs Enforcement*; Todd Blanche, *Attorney General of the United States*,

Respondents.

Case No. 26-cv-3799 (ECT/DJF)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Manuel P.N.'s[1] *Petition for Writ of Habeas Corpus Pursuant* (ECF No. 1) ("Petition"). Manuel seeks an order for his immediate release from immigration detention, or in the alternative, an order for a bond hearing. For the reasons stated below, the Court recommends the Petition be granted and Respondents ordered to release Manuel immediately.

## BACKGROUND

Manuel is a citizen of Ecuador, who has lived in the United States since approximately 2018. (ECF No. 1 at 6.) Manuel resides in Minnesota with his family, including his four-year-old daughter, who is a United States citizen. (*Id*. at 1-2.) Manuel works to support his family. (*Id*. at 7.) Manuel does not have any criminal convictions. (*Id*. at 4.)

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in immigration matters.

On August 20, 2026, Manuel was driving to work when Immigration and Customs Enforcement ("ICE") officers converged on his vehicle, blocking him in with their own vehicles. (ECF No. 1 at 2.) The officers had been working fugitive operations near the intersection of Lake Street and Cedar Avenue in Minneapolis when they ran a records check on Manuel's license plate and determined that the vehicle was registered to Manuel and that "DHS databases showed [he] was present in the United States without authorization." (ECF No. 8 at 2; ECF No. 8-1 at 2.) After stopping Manuel's vehicle, the officers requested identification from its occupants, including Manuel. (ECF No. 8 at 2.) Given the vehicle registration, and upon questioning the occupants and reviewing identification, the officers identified the driver as Manuel. (*Id.*) The officers questioned Manuel, and he "freely admitted that he did not have permission to reside in the United States legally and that he was from Ecuador." (*Id.*) The officers also determined that Manuel did not have identification listing his current address.[2] (*Id.* at 2.) The ICE officers consulted with Supervisory Detention and Deportation Officer ("SDDO") Randy Langworthy and determined that Manuel was a flight risk based on his "lack of identification containing [his] current address and access to a mobile conveyance." (ECF No. 8 at 2; ECF No. 8-1 at 2.)

The ICE officers ordered Manuel to exit his vehicle and placed him in handcuffs. (ECF No. 1 at 2.) The officers did not present him with a judicial warrant, administrative arrest warrant, or other document authorizing his arrest. (*Id.* at 2.) Manuel did not attempt to flee from the officers at any point during the stop and subsequent arrest. (*Id.* at 8.)

Following Manuel's arrest, the officers transported him to the St. Paul ICE Enforcement

[2] It is unclear whether Manuel simply lacked identification, or whether Respondents determined, prior to the arrest, that his current address was different than the one shown on whatever identification he produced. (*See* ECF Nos. 8, 8-1 at 2.) Either way, the record indicates Respondents obtained an address for him either before or shortly after the arrest. (*See* ECF No. 8-1 at 1.)

and Removal Operations ("ERO") field office for administrative processing. (ECF No. 8 at 2.) During that processing on the date of the arrest, ICE issued Manuel a Notice to Appear, Form I-862 ("NTA") and a Warrant for Arrest of Alien, Form I-200 ("I-200 Warrant").[3] (ECF No. 8 at 2.) SDDO Langworthy issued and signed the I-200 Warrant. (ECF No. 8-1 at 3; ECF No. 8-1.) The Notice to Appear requires Manuel to appear before an immigration judge on September 11, 2026. (ECF No. 8-2.) After processing, ICE officers transported Manuel to Sherburne County Jail in Elk River, Minnesota, where he remains in custody. (ECF No. 1 at 2-3; ECF No. 8 at 2.)

## DISCUSSION

### I. Relief Requested

Manuel filed the Petition on August 28, 2026 to challenge his ongoing detention at the Sherburne County Jail. (ECF No. 1.) The Petition asks the Court to issue a writ of habeas corpus ordering Respondents to release him immediately, or in the alternative, directing Respondents to provide Manuel with a bond hearing. (*Id*. at 25-26.) Respondents contend that Manuel is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), consistent with the recent ruling in *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026). (ECF No. 7 at 4-5.) In *Avila*, a divided panel of the Eighth Circuit interpreted Section 1225(b)(2)(A) to require the mandatory detention of any noncitizens present in the United States who have not been legally admitted, regardless of whether they recently arrived at the border or whether, like Manuel, they have been present in the interior of the country for a significant period of time. 170 F.4th at 1135–38.

Manuel concedes that the Eighth Circuit's decision in *Avila* forecloses any statutory claim

[3] Manuel states that the officers showed him paperwork after he was detained, but "did not provide him a copy." (ECF No. 1 at 8.) Respondents claim they served these documents. (*See* ECF No. 8.) The Court need not resolve this discrepancy because its decision does not turn on whether the documents were properly served.

to a bond hearing, which would have been available to him under 8 U.S.C. § 1226(a). (ECF No. 1 at 17-18.) Manuel nevertheless argues for his release or a bond hearing on grounds not foreclosed by *Avila*, including that: (1.) his warrantless arrest failed to comply with 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c); (2.) his warrantless arrest violated his Fourth Amendment right against unreasonable searches and seizures; (3.) his detention without a bond hearing violates the Due Process Clause of the Fifth Amendment of the U.S. Constitution; and (4.) Respondents' actions are the direct product of agency action taken in excess of statutory authority, and without observance of required procedure, such that they violate the Administrative Procedure Act ("APA"). (*Id*. at 21-25.)

The Court agrees with Manuel that his warrantless arrest violated the requirements of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c). The Court therefore recommends that the Petition be granted and Respondents ordered to release Manuel immediately on that basis.

## II. Warrantless Arrest

The Petition argues Manuel should be released because Respondents arrested him without a warrant and therefore violated 8 U.S.C. § 1357(a)(2), 8 C.F.R. § 287.8(c), and the Fourth Amendment. Though Respondents produced an NTA (ECF No. 8-2) and an I-200 Warrant (ECF No. 8-3), they readily admit that they only prepared and served the NTA and I-200 Warrant *after* Manuel's arrest and transportation to the St. Paul field office. (ECF No. 8 at 2.) Respondents nonetheless contend that this warrantless arrest was justified under 8 U.S.C. § 1357(a)(2) because: (1.) based on Manuel's statements and the vehicle registration check, the arresting ICE officers had reason to believe he was present in the United States in violation of U.S. immigration laws; and (2.) given the circumstances surrounding his arrest, he was likely to escape before a warrant could be obtained. (ECF No. 7 at 12.)

8 U.S.C. § 1357(a)(2) provides that:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant-
>
> …
>
> to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.

The statute's companion regulation, 8 C.F.R. § 287.8(c)(2), contains similar language, requiring that the arresting officer must have "reason to believe that the person to be arrested has committed an offense against the United States or is an alien illegally in the United States" and "reason to believe that the person is likely to escape before a warrant can be obtained."

Respondents have satisfied the first requirement for warrantless arrest under 8 U.S.C. § 1357(a)(2). Because the Fourth Amendment applies to arrests of noncitizens, courts construe the "reason to believe" requirement of 8 U.S.C. § 1357(a)(2) to mean "constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Before they stopped Manuel, the arresting officers ran a records check on the vehicle he was driving. (ECF No. 8 at 2.) The records check showed that the vehicle was "registered to an individual that DHS databases showed was present in the United States without authorization" (*id*. at 2), and that Manuel was the registered owner (*see* ECF No. 8-1 at 2). And when directly asked about his immigration status, Manuel "admitted that he did not have permission to reside in the United States legally and that he was from Ecuador." (*Id*. at 2.) Manuel does not dispute these contentions. (*See* ECF No. 9.) His voluntary statements established probable cause to believe he was present in violation of United States immigration laws. *See Jose V.P.R. v. Sheriff, Freeborn Cnty.*, No. 26-cv-3047 (NEB/DLM), 2026 WL 2546265, at *2 (D. Minn. Aug. 28, 2026) (finding first element of Section 1357(a)(2) satisfied when petitioner "made voluntary statements that [he] did not have

legal status in the United States.")

Respondents have not satisfied the second requirement for a warrantless arrest under 8 U.S.C. § 1357(a)(2). They have failed to demonstrate that Manuel was likely to escape before the arresting officers could secure a warrant. Courts have construed the phrase "likely to escape" to mean "likely to evade detention by immigration officers." *Hussen v. Noem*, 822 F. Supp. 3d 944, 988 (D. Minn. 2026) (quoting *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006-07 (N.D. Ill. 2016)); *see also Jesus F. D. v. Mullin*, No. 26-cv-2486 (PJS/DTS) (D. Minn. June 10, 2026) (ECF No. 10 at 8) (interpreting "likely to escape" to mean "risk of flight"); *Campos v. United States*, 888 F.3d 724, 734-35 (5th Cir. 2018) (interpreting "likely to escape" as likely to "disappear before a warrant could be obtained"); *United States v. Khan*, 324 F. Supp. 2d 1177, 1187 (D. Colo. 2004). The inquiry "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizen at 'another clearly identifiable location.'" *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (quoting *Escobar Molina v. U.S. Dep't of Homeland Sec.*, No. 25-cv-3417 (BAH), 2026 WL 1256234, at *10 (D.D.C. May 7, 2026)).

Respondents argue that Manuel was "likely to escape" the scene of the encounter because he had access to a vehicle. (ECF No. 7 at 12.) Respondents cite *Jany W. G. C. v. Easterwood*, No. 26-cv-3486 (JRT/DLM), 2026 WL 2364413, at *2 (D. Minn. Aug. 14, 2026), to support their contention that access to a vehicle alone is enough to demonstrate that a noncitizen is likely to escape the scene of the encounter. But in drawing this comparison, Respondents overlook one crucial fact: In *Jany W.G.C.*, the petitioner not only had access to a vehicle, but he also "attempted to flee on foot after noticing ICE/ERO officers approaching." *Id.* Unlike the petitioner in *Jany*

*W.G.C.*, by all accounts Manuel made no attempt to flee.[4] Manuel stopped his vehicle voluntarily without evasion and spoke candidly with the ICE officers. He was fully honest about both his identity and his lack of legal immigration status. (ECF No. 8 at 2.) There is no evidence that he tried to run or in any other way resisted his arrest or transportation to the St. Paul ERO field office. (*See* ECF No. 8 at 2). These facts do not establish a likelihood of escape. *Compare Elias M. v. Blanche*, No. 26-cv-2519 (JMB/DLM) (D. Minn. June 5, 2026) (ECF No. 23 at 12-13) (finding no likelihood of escape when immigration officers encountered petitioner in his vehicle during traffic stop), *with Jorge O. v. Blanche*, No. cv 26-3400 (PAM/ECW), 2026 WL 2494579, at *2 (D. Minn. Aug. 25, 2026) ("Petitioner was clearly a flight risk, evidenced by the fact that he fled from officers during this encounter.").

Respondents also contend that if Manuel had left the scene, they would not have been able to arrest him at another clearly identifiable location because he did not register his address with the Department of Homeland Security or present identification listing his current address. This argument is unconvincing. Respondents fail to clarify how and when they learned Manuel's current address, whether because Manuel gave it to them at the scene of the stop or otherwise, but it is likely they had that information when they arrested him. (*See* ECF No. 8 at 2, stating the officers identified the driver as Manuel after reviewing identification; ECF No. 8-1 at 2, stating that Manuel lacked identification "containing a current address," not that he lacked identification; *id.* suggesting the officers learned the address on his identification was not current before they arrested him.)

---

[4] Respondents produced a record stating that Manuel kept his car in drive while the ICE officers were questioning him and that they turned it off to prevent him from driving away. (ECF No. 8-1 at 2.) But Respondents do not argue this fact established a risk of escape (*see* ECF No. 7), or even mention it in their Response, and there is no evidence in the record to suggest Manuel attempted to drive away after he pulled over as directed.

In any event, they obtained that information on or before the day of his arrest (*see* ECF No. 8-1 at 1, listing his address under redaction), and there is no suggestion in the record that they had any difficulty doing so. Manuel was forthcoming and honest during the interaction, even admitting "freely" that he did not have permission to reside in the United States legally. *See Islamuddin A. v. Blanche,* No. 26-cv-3340 (ECT/JFD), 2026 WL 2546280, at *4 (D. Minn. Aug. 28, 2026) (finding no likelihood of escape when petitioner stopped his car as directed and "confirmed his name and date of birth when asked" but failed to produce identification); *see also Hector G.P.R. v. Warden, Freeborn Cnty. Adult Det. Ctr*, No. 26-cv-3048 (NEB/DLM), 2026 WL 2390280, at *4 (D. Minn. Aug. 7, 2026), *report and recommendation adopted*, 2026 WL 2392887 (D. Minn. Aug. 17, 2026) (finding respondents' claim that petitioner was "likely to escape" unconvincing in part on the basis that the petitioner was "forthcoming and honest" during ICE questioning); *Vladimir G. v. Easterwood*, No. 26-cv-2971 (JMB/ECW), 2026 WL 1786418, at *3 (D. Minn. June 22, 2026) (same). The arresting officers could have simply asked Manuel for his current address and taken basic steps to verify that information before they arrested him without a warrant. The vehicle Manuel was driving was registered to him. Respondents do not explain why they did not believe they could locate Manuel at the vehicle's registered address.

The Court further notes that Manuel has significant ties to the community. Courts have made the "self-evident finding that the likelihood of escape is lower when an individual has resided in the country for a lengthy period of time and has strong community ties." *Escobar Molina v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 3d 1, 31 (D.D.C. 2025) (collecting cases). Manuel lived in Minnesota, maintained a family home, supported a small child and had a job prior to his arrest. (*See* ECF No. 1 at 1-2, 19.) But Respondents' Declaration indicates the officers at the scene failed to consider any of this when they decided he was a flight risk and arrested him. *See*

*Ramirez Ovando v. Noem*, 810 F. Supp. 3d 1209, 1231 (D. Colo. 2025) (finding 8 U.S.C. § 1357(a)(2) requirements were not satisfied when officers "asked no questions—until after arrests—bearing on flight risk, including about questions about individuals' families, employment, or other community ties."). Though Manuel was on his way to work when the ICE officers intercepted him (*see* ECF No. 1 at 7-8), there is nothing in the record to suggest Respondents attempted to identify and confirm his employment address before they took him into custody. It is Respondents' burden to make a "particularized assessment" into whether a noncitizen is likely to evade detention. *Orellana v. Nobles County*, 230 F. Supp. 3d 934, 946 (D. Minn. 2017). Had ICE officers learned about Manuel's family and community ties and work address, or bothered to verify his home address, they would have learned that they were unlikely to have "trouble finding [him] again if they had released him while they obtained a warrant." *United States v. Bautista-Ramos*, No. 18-cr-4066 (LTS), 2018 WL 5726236, at *7 (N.D. Iowa Oct. 15, 2018); *see also United States v. Pacheco-Alvarez*, 227 F. Supp. 3d 863, 890 (S.D. Ohio 2016) (finding no likelihood of escape when noncitizen had a stable job, lived with his fiancé, and helped pay her rent and raise her two children).For these reasons, the Court finds Respondents have failed to demonstrate the "specific, limited circumstances" required to effect a warrantless arrest under 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2). *See Arizona v. United States*, 567 U.S. 387, 410 (2012). . Respondents are obligated to comply with the law, including applicable statutes and their own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266–67 (1954); *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) ("[T]he *Accardi* doctrine bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights[.]") (quotation omitted). Release is the typical remedy for unlawful executive detention. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Because Respondents did not

arrest Manuel subject to a valid warrant and did not otherwise comply with the warrantless arrest requirements of 8 U.S.C. § 1357(a)(2), his detention is unlawful, and release is the appropriate remedy. *See Islamuddin A.*, 2026 WL 2546280, at *4 (ordering release when Respondents failed to satisfy requirements for warrantless arrest under 8 U.S.C. § 1357(a)(2)); *Heler D.R.P. v. Blanche*, No. 26-cv-3675 (JRT/JFD), 2026 WL 2546901, at *2 (D. Minn. Aug. 28, 2026) (same); *Wilson T. v. Blanche*, No. 26-cv-2981 (JWB/LIB), 2026 WL 2445467, at *2 (D. Minn. Aug. 20, 2026) (same).

Respondents argue release is not the proper remedy and that Petitioner is foreclosed from challenging his arrest in a habeas action due to his pending immigration proceedings. (*See* ECF No. 7 at 6, citing *Arias v. Rogers*, 676 F.2d 1139, 1143-44 (7th Cir. 1982); *Min-Shey Hung v. U.S.*, 617 F.2d 201, 202 (10th Cir. 1980)). The Court disagrees with this reasoning.[5] "Seeking release from custody in an immigration habeas case based on an illegal arrest is not akin to a criminal defendant's claim that his unlawful arrest should prohibit the government from prosecuting him for a crime, nor is it like a noncitizen's effort to prohibit the government from pursuing removal proceedings." *Emily Andreina N. V. v. Blanche*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4 (D. Minn. July 31, 2026). Manuel is asking the Court for a release from custody, not "to prohibit removal proceedings against him." *Ruben C. R. v. Mullin*, No. 26-cv-2950 (NEB/DTS), ECF No. 13 at 6 (D. Minn. Aug. 7, 2026). Other judges in this District, including the presiding District Judge in this case, have ordered release following an invalid warrantless

[5] This case is distinguishable from *Eliud J.D. B. v. Blanche*, 26-cv-03639 (JWB/DJF) (ECF No. at 5), in which the undersigned found that a change in the petitioner's detention status precluded habeas review of the initial circumstances of his arrest. There, the petitioner sought habeas relief after an immigration judge entered an order of removal, the deadline to appeal from that order expired such that it was final, and the petitioner had previously received a bond hearing with an immigration judge who denied bond on grounds that he was a danger and a flight risk.

immigration arrest, notwithstanding the initiation of immigration proceedings upon issuance of a Notice to Appear. *Islamuddin A.,* 2026 WL 2546280, at *4; *Heler D.R.P.*, 2026 WL 2546901, at *2; *Wilson T.*, 2026 WL 2445467, at *2 (D. Minn. Aug. 20, 2026). The Court therefore recommends the Petition be granted and Manuel be released immediately.[6]

**III. Objections**

Because the Court finds Manuel's warrantless arrest necessitates immediate release, expediting these proceedings is warranted. Therefore, the Court is altering the standard timelines for Respondents to file objections to the Court's recommendation that the Petition be granted. *See* L.R. 72.2(b)(1) ("A party may file and serve specific written objections to a Magistrate Judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*.") (emphasis added). Respondents must file any objection to this Court's recommendation on or before **September 11, 2026**. Petitioner may file a response to any objections on or before **September 15, 2026**.

**RECOMMENDATION**

Based on the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1. Petitioner Manuel P.N.'s *Petition for Writ of Habeas Corpus* (ECF No. 1) be **GRANTED**.

2. Respondents be ordered to release Petitioner Manuel P.N. from custody:

---

[6] Because Manuel's warrantless arrest did not adhere to the requirements of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c), and he should be released on that ground, it is unnecessary to reach the merits of his remaining claims, including his contention that his continued detention without a bond hearing violates the Due Process Clause of the Fifth Amendment. However, the presiding judge in this case, the Honorable Chief Judge Eric C. Tostrud, has previously rejected such a challenge. *See Eliseo C. v. Blanche*, No. 26-cv-2282 (ECT) (D. Minn. June 29, 2026).

A. As soon as practicable;

B. Inside the State of Minnesota;

C. At a safe time and place communicated in advance to counsel; and

D. With ***all*** of Petitioner's personal effects in Respondents' possession, such as driver's license, immigration papers, passport, cell phone, and keys.

Dated: September 8, 2026

*s/ Dulce J. Foster*
Dulce J. Foster
United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. For the reasons previously stated, Respondents must file any objection to this Report and Recommendation on or before **September 11, 2026**. Petitioner may file a response to any objections on or before **September 15, 2026**.