UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Manuel P.N.,<br><br>Petitioner,<br><br>v.<br><br>David Easterwood, *Director, St. Paul ICE Enforcement and Removal Operations*; Markwayne Mullin, *Secretary, Department of Homeland Security*; David Isais, *Administrator, Sherburne County Jail*; Todd Blanche, *Attorney General*; and David J. Venturella, *Acting Director, U.S. Immigration and Customs Enforcement*,<br><br>Respondents. | File No. 26-cv-3799 (ECT/DJF)<br><br><br><br>**OPINION AND ORDER** |

---

Petitioner Manuel P.N. has moved to enforce judgment or, alternatively, to reopen proceedings and adjudicate renewed habeas claims. *See* ECF No. 15. Manuel asserts that his re-arrest in the Whipple Federal Building after he was processed for release violated this Court's September 21, 2026 order for his immediate release. Alternatively, Manuel seeks to reopen his detention and asks the Court to adjudicate an amended petition based on a Form I-918 certification that Manuel received after judgment was entered on the initial petition. Both the motion to enforce and Manuel's amended petition will be denied.

Start with the motion to enforce. In an Order dated September 21, 2026, Manuel's original habeas petition was granted and Manuel was ordered released because Respondents had not shown that Manuel's initial arrest complied with 8 U.S.C. § 1357(a)(2)'s warrantless arrest requirements. ECF No. 13 at 3–4. The September 21

Order provided that "[n]othing in [the] Order precludes Respondents from later arresting or detaining Manuel pursuant to lawful authority and in compliance with applicable constitutional, statutory, and regulatory requirements." *Id.* at 4. Judgment was entered on September 21. ECF No. 14.

On September 22, 2026, ICE officers in the Whipple Federal Building processed Manuel's release, issued release paperwork stating that Manuel was "released from ICE custody with no conditions," and returned all of Manuel's personal property. *See* ECF No. 23 ¶ 4; ECF No. 23-3 at 3–4. According to Manuel, while he was still inside the Whipple Federal Building, ICE officers "pointed [him] in the direction [ICE officers] said [he] needed to go to leave." *See* ECF No. 15 (translated Declaration of Manuel P.N.) at 10–12 ¶ 3. Manuel "followed the officers' instructions and walked in the direction they told [him] was the way out." *Id.* at 10 ¶ 4. Manuel states that he "did not leave the secure area of the facility" or go outside, nor did he reach a sidewalk, parking lot, public lobby, or "any other place where [he] was free to decide where to go." *Id.* at 10 ¶ 5; *see also id.* at 11 ¶ 15 ("At no point between receiving the paperwork and being arrested again did I leave ICE-controlled space or reach a place where I was free to go on my own."). According to Manuel, "there was nowhere else for [him] to go except in the direction the officers told [him]" and he "was still following ICE's directions as [he] moved through the facility." *Id.* at 10 ¶ 6. Manuel states that "before [he] exited the facility," four ICE officers stopped him, served him with paperwork they described as a warrant, and placed him under arrest again. *See id.* at 11 ¶¶ 7–8.

Respondents submit Manuel's Form I-213 immigration record, signed by Deportation Officer Olson, which states that "[o]n September 22, 2026, [Manuel] was transported from Sherburne County Jail to the ICE ERO Fort Snelling Field Office and was released from ICE custody at approximately 0920 hours." ECF No. 23-1 at 1. The I-213 goes on to explain that "at approximately 0925 hours," Manuel "was arrested *outside of* the ICE ERO Fort Snelling Field Office" and "served a I-200, Warrant for Arrest of Alien." *Id.* at 2 (emphasis added). Deportation Officer Mitchell T. Olson has filed a sworn declaration explaining that "[t]he ICE/ERO Fort Snelling Office is located within the Bishop Henry Whipple building," and that the Whipple Building "is a federal building open to the public" with "one entrance open to the public and multiple exits." ECF No. 23 ¶ 8.

Manuel argues that his re-arrest with a new warrant before he "obtained meaningful liberty" violated the September 21 Order granting his release. *See* ECF No. 16 at 8. Manuel offers no on-point legal authority to support his challenge. Manuel relies on cases from this District placing additional conditions on a habeas petitioner's release to support his argument that "a release order contemplates a real-world transition from custody to freedom of movement." *See* ECF No. 16 at 10–11 (first citing *Sorelys R.O. v. Blanche*, No. 26-cv-3859 (ECT/LIB), ECF No. 8 at 6–7 (D. Minn. Sept. 10, 2026); then citing *Jose M. v. Blanche*, No. 26-cv-3927 (JMB/JFD), ECF No. 10 at 8–10 (D. Minn. Sept. 14, 2026); and then citing *Riky A.M.L. v. Blanche*, No. 26-cv-1429 (JRT/JFD), ECF No. 75 at 7–8 (D. Minn. Sept. 16, 2026). But the imposition of release conditions in those cases does not answer whether the re-arrest of an individual released without such conditions, *see* ECF No. 13, violated a release order explicitly stating that "[n]othing in this Order precludes

Respondents from later arresting or detaining [the petitioner] pursuant to lawful authority and in compliance with applicable constitutional, statutory, and regulatory requirements," *see id.* at 4.

Manuel argues that ICE never "relinquished custody" of him because "[h]e remained inside the secure facility and under ICE-directed movement until agents waiting on the designated exit route immediately stopped him." *See id.* There does appear to be a factual dispute as to whether Manuel had reached an unsecured area in the Whipple Building when he was re-arrested. *Compare* ECF No. 15 at 10 ¶ 5 (stating that Manuel "did not leave the secure area of the facility"), *and id.* at 11–12 ¶ 15 (stating that Manuel "was arrested again before [he] reached any public or outside area"), *with* ECF No. 23 ¶ 8 (explaining that the "ICE/ERO Fort Snelling Field Office is located within the [Whipple Building]," and the Whipple Building is "open to the public"), *and* ECF No. 23-1 at 2 (stating that Manuel was re-arrested "outside of the ICE ERO Fort Snelling Field Office"). But that dispute doesn't change things. The record evidence shows, and Manuel does not dispute, that he was provided release paperwork releasing him without conditions and his personal belongings were returned to him, *see* ECF No. 23-3 at 3–4, and Manuel does not assert that he was handcuffed, shackled, or subjected to any other bodily restraints at the time that he was re-arrested, *see* ECF No. 15 at 10–12. Even assuming that Manuel is correct that ICE officers re-arrested him in a secured area of the Whipple Building, Manuel provides no legal authority that would make another release the effective remedy for such a violation. Manuel's motion to enforce will be denied.

Separately, Manuel seeks to reopen the proceedings to adjudicate his Renewed and Supplemental Verified Petition for Writ of Habeas Corpus, ECF No. 18 ("Amended Petition"), which raises "newly developed U-visa and victim-centered enforcement claims" that, according to Manuel, are present due to his "post-judgment custody event and post-judgment facts the Court has never adjudicated," *see* ECF No. 15 at 3. Specifically, on September 28, 2026, the same day Manuel filed his Amended Petition, Manuel received a "Form I-918 Supplement B" certification from the Hennepin County Attorney's Office. *See id.*; *see also* ECF No. 17. The Form I-918 B certification describes an April 2021 incident where Manuel was the victim of second-degree felony assault with a dangerous weapon, after which he provided information about the incident to the Minneapolis Police Department. *See* ECF No. 17 (copy of Form I-918 certification filed under seal). Manuel acknowledges that the Form I-918 Supplement B certification is "not itself a U visa," yet he argues that because of it, he "falls within the Pending Petition Class described in" *Immigration Center for Women and Children v. Noem*, 351 F.R.D. 324 (C.D. Cal. 2026) ("ICWC"). According to Manuel, the Form I-918 certification "independently triggers ICE Directive 11005.3's requirement that victim evidence be considered in custody decisions." *See* ECF No. 15 at 3; *see also* ECF No. 18 at 1. Manuel states that he does not "ask this Court to treat [the *ICWC*] order as an automatic release command." *See* ECF No. 24 at 10. Rather, he asks that "Respondents . . . identify the framework they actually applied"—namely, whether Respondents applied 2025 Guidance, rescinded as to the preliminarily certified class in *ICWC*, or if Respondents treated ICE's earlier directive 11005.3 as controlling. *See id.* at 12.

There are at least three problems with Manuel's Amended Petition. (1) To the extent Manuel relies on *ICWC* as a basis for relief, it is not clear that Manuel would be a member of the *ICWC* class. The relevant "pending petition" class the *ICWC* court preliminarily certified consists of "[a]ll individuals with pending principal or derivative U visa petitions . . . who ICE detains or seeks to detain for civil immigration enforcement." *See* 351 F.R.D. at 396; *see also* ECF No. 15 at 3 (arguing that Manuel's "pending petition" would put him in the ICWC "Pending Petition Class"). Only in his reply brief does Manuel assert that he has filed a Form I-918 (U visa) petition, but even that is not properly supported. *See* ECF No. 24 at 10 ("On October 1, 2026, Manuel filed his Form I-918 petition with USCIS. Proof of delivery is attached as Exhibit A."). The referenced Exhibit A is a generic USPS Tracking form sent to an unspecified address in Phoenix, Arizona. *See* ECF No. 24-1. The purported "Form I-918 petition" is not attached, nor is there any declaration stating that it was sent to USCIS. In other words, it is not clear from the record evidence that Manuel has filed a Form I-918 petition that would conceivably place him in the *ICWC* court's "pending petition" class, as Manuel suggests. (2) Even if Manuel filed his Form I-918 petition with USCIS on October 1, 2026, it is difficult to understand how Respondents could have been required to consider, at the time of Manuel's detention, a later-filed Form I-918 Schedule B certification or a Form I-918 petition. *Compare* ECF No. 23-1 (stating that Manuel was re-arrested on September 22, 2026); *with* ECF No. 17 (Manuel's Form I-918 certification dated September 28, 2026), and ECF No. 24 at 10 (stating that "[o]n October 1, 2026, Manuel filed his Form I-918 petition with USCIS"). (3) Even if Manuel satisfied the *ICWC* preliminary class definition, my earlier decisions in *Eliseo C. v.*

*Blanche*, No. 26-cv-2282 (ECT/SGE), 2026 WL 2683449, at *6–7 (D. Minn. June 29, 2026), and *Steven F.V.Z. v. Blanche*, No. 26-cv-2909 (ECT/SGE), 2026 WL 2641759, at *3 (D. Minn. Sept. 8, 2026), would foreclose Manuel's arguments for release on *ICWC* grounds. *See also Jose Alberto C.D. v. Blanche*, No. 26-cv-3566 (KMM/LIB), 2026 WL 2588362, at *4 (D. Minn. Sept. 2, 2026) (noting "serious reservations about whether the ruling in *ICWC* actually applies to anyone beyond the named plaintiffs in that case," given that the INA bars such injunctions under 8 U.S.C. § 1252(f)(1)). For these reasons, then, Manuel's claims that rest on the *ICWC* court's stay of ICE's 2025 Guidance—Counts 1–3 of the Amended Petition—do not entitle Manuel to a writ of habeas corpus.

Finally, as Manuel appears to acknowledge, *see* ECF No. 24 at 15, his Fifth Amendment Due Process claim fails to provide a basis for habeas relief for the same reasons set forth in *Eliseo C.*, 2026 WL 2683449, at *3–4, and *Steven F.V.Z.*, 2026 WL 2641759, at *3.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS ORDERED THAT**:

1. Petitioner Manuel P.N.'s Emergency Motion to Enforce Judgment or, in the Alternative, to Reopen Proceedings and Adjudicate Renewed Habeas Claims [ECF No. 15] is **DENIED**; and

2. Petitioner Manuel P.N.'s Renewed and Supplemental Verified Petition for Writ of Habeas Corpus [ECF No. 18] is **DENIED**.

Dated: November 2, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court